R.C.R., INC., a Wyoming corporation, Appellant (Defendant and Counterclaim Plaintiff),

v.

RAINBOW CANYON, INC., a Wyoming corporation; MC Operating Company, a Texas partnership; Robert E. Deline and Annabelle M. Deline, husband and wife; Kirk Company, a Texas partnership; Gary L. Palmer and Nancy J. Palmer, husband and wife; and James C. Hill and Sandra L. Hill, husband and wife, Appellees(Plaintiffs and Counterclaim Defendants),

R.C.R., Inc., a Wyoming corporation, Appellant (Defendant and Counterclaim Plaintiff),

v.

James C. Hill and Sandra L. Hill, husband and wife, Appellees (Plaintiffs and Counterclaim Defendants).

Nos. 97–225, 97–226.

Supreme Court of Wyoming.

April 27, 1999.

LEHMAN, Chief Justice.

This appeal centers around the enforceability and location of an express easement granted by the predecessors in interest of R.C.R., Inc. to James C. and Sandra L. Hill (Hills) to access their property. The trial court granted a partial summary judgment in favor of the Hills, concluding the easement was valid and enforceable. After a bench trial, the court determined the location of the easement had been fixed by its historic use. We affirm.

## ISSUES

Appellant, R.C.R., Inc., presents the following issues:

a. Is the easement granted by that certain document entitled "Easements," recorded in book 694 at page 236 of the Carbon County records, an easement in gross?

b. Did the easement terminate upon a conveyance of their lands by the Grantees?

c. Is the easement a permanently floating servitude?

d. Did the Trial Court err when it located the easement relying on *Edgcomb v. Lower Valley Power & Light,* 922 P.2d 850 (Wyo. 1996)?

e. In the event the easement at issue must be located, did the Trial Court err in not allowing the servient estate owner the right in the first instance to fix the permanent location of the easement?

f. Did the Trial Court lose jurisdiction of the matter at the time the full time for appeal commenced to run, such that the *Amended Judgment* entered by the Trial Court is null and void and of no legal force or effect on the parties or the subject matter of this action?

The Hills, as appellees, respond with these two issues:

A. Did the trial court properly grant partial summary judgment in favor of Appellees on the validity of an express easement?

B. Did the trial court properly locate the easement used by Appellees to gain access

Kermit C. Brown of Brown, Nagel & Waters, LLC, Laramie, WY, for Appellant.

John R. Vincent, Riverton, WY, for Appellees Hills and MC Operating Company.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

* Chief Justice at time of expedited case conference; retired November 2, 1998.

from the Baggott County Road to their home located in Section 9, T. 15 N., R. 83 W., 6th P.M., Carbon County, Wyoming?

### FACTS

In 1959, Rainbow Canyon, Inc. (Rainbow Canyon) purchased land adjacent to the Encampment River in Carbon County, Wyoming. Rainbow Canyon was incorporated by George B. Kelley, Stephen G. Burg, Edwin F. Deline, and Walter W. Deline as a fishing club, and each held one share in the corporation. Each shareholder also received a one-half acre lot on the Rainbow Canyon property. The individual plaintiffs in this case are the successors in interest to the original Rainbow Canyon shareholders.[1]

The property was originally accessed by a Bureau of Land Management (BLM) road, which required fording the Encampment River from the west to the east side of the river. In 1960, Walter Deline asked Kermit Platt, who owned land adjoining the Rainbow Canyon property to the south, about purchasing a parcel of his land on the east side of the river so the property could be accessed from the county road. Mr. Platt did not wish to sell; however, he agreed to an access road across his land and suggested a contractor to blade a road through the sagebrush. No other individual directly sought permission to cross Mr. Platt's property at that time, but each of the original owners, and their successors in interest, used the road.

In 1969, the Hills purchased an interest in Rainbow Canyon. Around 1976, they decided to build a home. The bank, which financed a portion of the Hills' construction costs, required a valid, recorded access easement to the Hills' property. On February 20, 1979, in a document entitled "Easements," Mr. and Mrs. Platt granted the Hills an easement for ingress and egress from the county road to the Hills' property across the Platts' property.[2] The document was properly executed and recorded.

The document provides, in pertinent part:

FOR AND IN CONSIDERATION OF THE SUM OF Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, Kermit C. Platt and Barbara P. Platt, husband and wife, hereinafter called the Grantor (whether one or more), hereby grants unto James C. Hill and Sandra L. Hill, husband and wife, P.O. Box 6, Encampment, Wyoming, their heirs and assigns, hereinafter called Grantee (whether one or more), * * *

* * * a perpetual right of way and easement to maintain, inspect, operate and travel upon an access road from the existing county road to the Grantees' tract of land situate in the SE¼SE¼ of Section 9, Township 15 North, Range 83 West of the 6th P. M., over, across and upon the lands owned by the Grantor in the E½ of Section 16, Township 15 North, Range 83 West of the 6th P. M., together with the right of ingress and egress to and from said land for any and all purposes necessary and incident to the exercise by the Grantee of the rights granted by this easement and right of way.

Grantor shall have the right to use and enjoy the above described premises and the Grantee shall not interfere with the Grantors' use and occupancy of said land and shall not build, create or permit any obstructions or excavations or ditches which would interfere with the safety or grazing of livestock; provided, however, Grantor shall not exercise such use and enjoyment in a manner that will impair or interfere with the exercise by Grantee of any of the rights herein granted.

The terms, conditions and provisions of this agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors, assigns and legal representatives.

---

1. The Kirk Company acquired Mr. Kelley's interest; the Palmers acquired Mr. Burg's interest; Robert and Annabelle Deline acquired Edwin Deline's interest; and the Hills acquired Walter Deline's interest.

2. In addition to the easement for ingress and egress, the document also grants an easement for a water line, which is not at issue in the case at bar.

All rights herein granted may be released or assigned in whole or in part.

In 1990, Jon R. and Martha K. Gray purchased the northern 90 acres of the Platt's property, and, in 1992, they acquired the remaining 230 acres of the parcel. The warranty deeds included language indicating that the deeds were subject to all easements, reservations, restrictions, and rights-of-way of record or apparent on the grounds. The recorded Hill easement was thus excepted from the deeds, and the title insurance policy also excepted the Hill easement. Title to the entire parcel was eventually transferred to R.C.R., Inc., a corporation owned by the Grays. R.C.R., Inc. subsequently sold the southern 230 acres to Alex J. Horst.

In 1993, Mr. Gray wrote the Rainbow Canyon shareholders a letter, proposing to give them a written easement for either: 1) a conveyance of some Rainbow Canyon land to him and cross-fishing rights, or 2) an equal share of ownership in Rainbow Canyon, Inc. and certain amendments to its bylaws. On June 11, 1994, R.C.R., Inc. and Mr. Horst granted Rainbow Canyon an easement across a portion of the Gray and Horst lands. That easement did not follow the route of the existing access road and, by its own terms, has now expired. In the fall of 1994, Mr. Gray sent the shareholders an invoice for trespassing fees in the amount of $4,800 for six months.

Rainbow Canyon, Inc. and its shareholders brought a quiet title action, alleging, under various theories, their rights to access across the property owned by the defendants, R.C.R., Inc. and Mr. Horst. The defendants counterclaimed, also seeking to have their title quieted. The trial court granted a partial summary judgment, concluding that the Hills have a valid, appurtenant easement across the defendants' property, but leaving for trial the issue of the precise location of the easement. A two and one-half day bench trial was held June 5 through June 7, 1996. On January 17, 1997, the trial court entered its Judgment, quieting title in R.C.R., Inc. and Mr. Horst, subject to the Hill easement. The court reiterated its previous ruling that the Hill easement is valid, and set the exact location of the easement. The court determined that the other plaintiffs took nothing in the action; they have not appealed.

On January 31, 1997, R.C.R., Inc. and Mr. Horst filed a Motion to Alter or Amend Judgment pursuant to W.R.C.P. 59(e). They noted that the trial exhibit attached to the court's judgment and delineating the fixed location of the Hill easement as "the purple road" (Exhibit 33) was unclear in that it appeared to include splinter routes accessing the Palmer and Deline lots on the Rainbow Canyon property. In addition, it was not possible to ascertain the location of the easement on the black and white copy provided to counsel. The defendants also argued that the easement was intentionally drafted as a permanently floating servitude, and the court should not have fixed the location.

On February 26, 1997, the Hills filed their Motion to Alter or Amend Judgment based on a clerical mistake in the judgment, pursuant to W.R.C.P. 60(a). The Hills pointed out that Exhibit 33 did not depict the southern part of Mr. Horst's property or the county road, and thus the Judgment did not locate the entire Hill easement which, by its terms, provides access from the county road to the Hill property. The Hills offered a substitute map, Exhibit A, which included the county road and all of Mr. Horst's property.

The court held a hearing on the parties' motions to alter or amend. As of May 30, 1997, no decision had been rendered on the outstanding motions, and R.C.R., Inc. and Mr. Horst filed a Notice of Appeal from the Judgment, which was docketed in this court as No. 97–225.

On June 4, 1997, the trial court entered its Amended Judgment, granting the Hills' motion, and granting the R.C.R., Inc./Horst motion in part. Specifically, the judgment was altered to substitute Exhibit A as the attachment which shows the location of the Hill easement. The court delineated the easement with Xs, and clarified that the easement accessed only the Hills' lot. Finally, the court ordered the parties to share the cost of a metes and bounds survey of the fixed location of the Hill easement. On June 30, 1997, R.C.R., Inc. and Mr. Horst filed a Notice of Appeal from the Amended Judg-

ment, which was docketed in this court as No. 97–226.

Docket Nos. 97–225 and 97–226 were consolidated on appeal. We subsequently granted Mr. Horst's motion to dismiss him as an appellant.

## STANDARD OF REVIEW

The factual findings of a judge are subject to a broader scope of review than a jury verdict, and the appellate court may examine all of the properly admissible evidence in the record. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). However, the court's findings are presumptively correct and will not be set aside unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* The court's conclusions of law are reviewed de novo. *Hopper*, 861 P.2d at 538.

■ The court derives the meaning of an easement from its language, much as we would in the case of a deed or other written agreement. *Edgcomb v. Lower Valley Power and Light, Inc.*, 922 P.2d 850, 854 (Wyo. 1996). If the language of the easement is not ambiguous and if the intent of the parties can be gathered from its language, that should be done as a matter of law. *Id.* If the terms of description are inadequate or nonexistent, then extrinsic evidence may be considered to ascertain the intent of the parties as to the location and dimensions of the easement. *Id.* at 855 (quoting Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* ¶ 7.02 (rev. ed.1995) [hereinafter *Bruce & Ely* ]); *see also Salt River Enterprises, Inc. v. Heiner*, 663 P.2d 518, 521 (Wyo.1983).

## DISCUSSION

### Nature of Hill Easement

The first question presented by this appeal is whether the Hills' easement is appurtenant or in gross, which bears on the issue of transferability. R.C.R., Inc. argues that the Hill easement was an easement in gross, which terminated upon the Hills' conveyance to MC Operating Company [3] in 1988.

■ " 'An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land.' " *Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 975 (Wyo.1974) (quoting *Restatement of Property* § 453, at 2914 (1944)). In contrast, " '[a]n easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor.' " *Id.* (quoting *Restatement of Property, supra,* § 454, at 2917). An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant. *Id.*

■ The Hill easement, the pertinent portions of which are set out in the facts, includes terms which we have described as badges of an appurtenant easement. The language of the easement indicates that it was created to benefit a specific tract of land. *Weber*, 519 P.2d at 975. The conveyance contains a perpetual right-of-way grant for ingress and egress to the Hills' property, including the right to inspect and maintain the road. *Id.* The easement benefits the Hills in their use of their property and is not limited to the Hills personally. Rather, the Platts granted the access rights to the Grantee, "their heirs and assigns," and the instrument expressly states that its provisions shall inure to the benefit of the parties, "their heirs, executors, administrators, successors, assigns and legal representatives." *Id.* The easement can, therefore, fairly be construed as appurtenant.

■ An easement appurtenant is transferred with possession of the dominant property even if it is not mentioned in the document of transfer. *Delgue v. Curutchet*, 677 P.2d 208, 212 (Wyo.1984). The "Easements" document contains no limitations on the

---

**3.** On June 29, 1988, the Hills transferred their property by warranty deed to named-plaintiff MC Operating Company. The Hills maintain that the transfer was for purposes of a loan, and that they retained equitable title to, and possession of, the property. According to the Hills' brief, title was transferred back to the Hills on February 26, 1996.

transferability of the easement and, in fact, contemplates future transfers of both the dominant and servient estates. The district court correctly concluded that the Hill easement is an easement appurtenant which is transferable and which survived the conveyance of the Hill tract.

### Location of Hill Easement

Having determined that the Hill easement is a valid, appurtenant easement, we turn to the matter of its location. The trial court, applying the principles set out in *Edgcomb v. Lower Valley Power and Light, Inc.*, 922 P.2d 850 (Wyo.1996), determined that the easement was a floating easement which had been located by historic use. R.C.R., Inc. contends the Hills' easement is a permanently floating servitude and, therefore, the court erred when it fixed the location of the easement. Their position is that *Edgcomb* is factually different from, and should not control the outcome of, the case at bar. In the alternative, R.C.R., Inc. argues that the servient estate should be allowed to fix the permanent location in the first instance.

■ The "Easements" document does not specify the location of the easement. An express easement which does not state the location of the easement is called a floating easement. *Edgcomb*, 922 P.2d at 855; *Bruce & Ely, supra*, ¶ 7.02[2]. Floating easements, because they are not limited to any specific area on the servient tenement, burden the entire servient estate. *Bruce & Ely, supra*, ¶ 7.02[3]. Although R.C.R., Inc. uses the term "permanently floating servitude," they do not argue that the Hill easement should remain indefinite and unfixed in its location. Their argument is that the "Easements" document reserves a right in the servient estate to locate and relocate the easement periodically.

In support of its position, R.C.R., Inc. directs our attention to the following language in the granting instrument:

Grantor shall have the right to use and enjoy the above described premises and the Grantee shall not interfere with the Grantors' use and occupancy of said land and shall not build, create or permit any obstructions or excavations or ditches which would interfere with the safety or grazing of livestock[.]

They believe that the above language, along with the use of the term "an" access road as opposed to "the" access road, demonstrates the parties' intent that the easement not be permanently located but, instead, subject to periodic relocation by the servient estate. While the above language limits the Hills' use of the easement so as not to interfere with the Grantors' use and occupancy, we do not find that language susceptible to the broad interpretation assigned by R.C.R., Inc. The instrument does not reserve to the servient estate either the right to locate the easement in the first instance, or the right to unilaterally relocate the easement.

■ Once a court concludes that the location or the dimensions of an easement are not adequately described in the instrument, it generally examines the surrounding circumstances to determine the intent of the parties. *Edgcomb*, 922 P.2d at 855 (quoting *Bruce & Ely, supra*, ¶ 7.02[2][b] ). The parties are presumed to have intended an easement that is reasonably convenient or necessary under the circumstances. *Id.* Courts look to various factors to establish a reasonable description of the easement, including the purpose of the easement, the geographic relationship between the dominant and servient estates, and the benefit to the easement holder compared to the burden on the servient estate holder. *Id.* "Use existing at the time the easement was created is considered strong evidence of the intended location and dimensions of the easement. * * * Use commenced after the execution of the easement to which the servient estate owner acquiesces is also persuasive." *Bruce & Ely, supra*, ¶ 7.02[2][b]. The court must be careful to determine the location of the easement on the basis of circumstances at the time the easement was created. *Id.*

The trial court, relying on this court's decision in *Edgcomb*, determined that the location of the Hill easement was fixed by historic use. *Edgcomb* involved a floating easement for a power transmission line. Applying the principles set out in the preceding paragraph, this court held that the parties' intent, evidenced by the granting in-

strument, was that the easement would become definitely located once the line was constructed. 922 P.2d at 855–56. The court determined the easement was defined by the current location of the transmission line. *Id.* at 855.

R.C.R., Inc. believes the case at bar is distinguishable from *Edgcomb* because multiple routes have been used over the years to access the Rainbow Canyon property. However, at the time the Hill easement was granted in 1979, only one road traversed the Platt property, the road that was constructed around 1960 to provide Mr. Deline access to his land in Rainbow Canyon. That road was referred to as the "orange road" throughout the proceedings.[4] When Mr. Platt was asked, during his deposition, whether he gave Mr. Hill permission to use a particular road in the written easement, he responded, "There was no particular road, because there was only one road." Mr. Platt's testimony is strong evidence that the parties intended the easement to be located on the one and only access road in existence at the time the easement was granted—the orange road.

R.C.R., Inc. argues that the servient estate should designate the location of the easement in the first instance. A number of courts hold, where the location of an easement has not been defined, that the servient estate should designate the location of the easement in the first instance. 4 Richard R. Powell & Patrick J. Rohan, *Powell On Real Property* § 34.12[2] n.19 and cases cited therein; *Bruce & Ely, supra,* ¶ 7.02[2][a]. However, as discussed above, the intent of the parties in this case is that the easement was defined by the access road in existence at the time the easement was created. In any event, Mr. Platt, the Grantor and original servient estate holder, was involved in the construction of the original access road.

Sometime in the early to mid–1980s, Mr. Platt relocated a portion of the road, which had often drifted shut in the winter, to the top of a hill where the wind could sweep it

bare. The new route, referred to as the "purple road," overlapped the orange road to a significant degree, retained the original termini, and was agreeable to the Hills. The Hills accessed their property via the purple road from the time it was built until 1995, when Mr. Gray unilaterally relocated a portion of the road. The relocated segment, designated as the "pink road," entered the Rainbow Canyon property at a different location than the purple road, and required the Hills to enter their property from their back yard. The trial court, in its original Judgment, disregarded the pink road and fixed the purple road as the permanent location of the easement.

The fact that the permanent location designated by the court, the purple road, deviated slightly from the original route, is inconsequential considering that both parties were in agreement with the move. "An easement holder and the servient estate owner may relocate the easement by mutual consent." *Ericsson v. Braukman,* 111 Or.App. 57, 824 P.2d 1174, 1177 (1992) (quoting *Bruce & Ely, supra,* ¶ 7.03[1][c] ). In addition, the court properly disregarded Mr. Gray's unilateral relocation of the road. The general rule, which we adopt here, is that unilateral relocation of an easement is not permitted, absent an express provision in the granting instrument. *Bruce & Ely, supra,* ¶ 7.05[1]. A unilateral relocation rule would introduce considerable uncertainty into land ownership and incite litigation. *Stamatis v. Johnson,* 71 Ariz. 134, 224 P.2d 201, 203 (1950); *see also Davis v. Bruk,* 411 A.2d 660, 665 (Me. 1980). In addition, the easement holder could be subject to harassment by the servient owner's attempts to relocate to serve his own conveniences. *Davis,* 411 A.2d at 665. A handful of courts permit the servient estate owner to unilaterally relocate the easement if the original termini are retained and the easement holder is not materially inconvenienced. *Bruce & Ely, supra,* ¶ 7.05[4]. However, even if we were to apply this exception, the record fully supports the court's decision. Mr. Hill testified that he

---

4. During Mr. Hill's deposition, he colored the various routes on a map, which was later entered as a trial exhibit. The witnesses referred to these colored roads during their testimony, as did the court in its Judgment.

was not notified about the relocation beforehand, and the new road required him to enter the Rainbow Canyon property through his back yard instead of through his front entrance, which had been specially designed and landscaped.

We hold that the trial court properly applied the law to the facts of this case to determine the location of the Hill easement. The Judgment entered by the trial court is affirmed except to the extent it was amended as described in the following section.

### Amended Judgment

Finally, R.C.R., Inc. raises a procedural argument, averring that the court acted outside its authority when it amended the original judgment after the end of a court term.[5] Wyo. Stat. Ann. § 1–16–401(a) (Michie 1997) sets out the circumstances under which a judgment can be modified after the end of a term, and we agree that none of those circumstances fit the facts of this case. However, in *Spomer v. Spomer*, 580 P.2d 1146, 1148 (Wyo.1978), this court held that W.R.C.P. 60(a) eliminates the requirement that motions to correct clerical errors be made within the court term. Therefore, the key question is whether the error for which the Hills sought relief in their motion to alter or amend was properly classified as a clerical error which was subject to correction after the end of the term in which the judgment was entered.

Rule 60(a) of the Wyoming Rules of Civil Procedure provides in pertinent part:

(a) *Clerical mistakes.*—Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

Rule 60(a) is intended to correct clerical, not judicial errors. *Spomer*, 580 P.2d at 1148–49. A clerical error is a mistake or omission of a mechanical nature, apparent on the face of the record, that prevents the judgment as entered from accurately reflecting the judgment that was rendered. *Id.* at 1149; *Matter of Kimball's Estate*, 583 P.2d 1274, 1278 (Wyo.1978). "[T]he central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent." *Spomer*, 580 P.2d at 1149. Rule 60(a) is designed to clarify as well as to correct, and is properly invoked to dispel either patent or latent ambiguities in a judgment. *Id.*

In their Rule 60(a) motion, the Hills pointed out that the map attached to the original judgment, Exhibit 33, did not depict the southern part of Mr. Horst's property or the county road. Therefore, the judgment did not locate the entire Hill easement which, by its terms, provides access from the county road to the Hill property. The Hills offered a substitute map, Exhibit A, which included the county road and all of Mr. Horst's property.

Historically, the Hills and the other plaintiffs in this case did not enter the Platt property from the county road. Rather, they turned north from the county road onto property directly to the east of the Platt tract and traveled about a quarter mile before turning west, crossing a cattle guard and entering the Platt tract (now owned by Mr. Horst) on the purple road. Nevertheless, the new map, Exhibit A, depicted a road marked as "Gray's New Road," which turned north from the county road onto Mr. Horst's property and then tied into the purple road.[6] Mr. Gray testified that when he first bought the north 90 acres from Mr. Platt, he obtained a written access easement from the county road to the existing access road used by the Hills and built Gray's New Road.

In its amended judgment, the court recognized that the Hill easement clearly and unambiguously provided for an access easement from the county road to the Hills' Rainbow

---

5. The court entered its original judgment on January 17, 1997. The court's term ended on February 17, 1997, but the plaintiffs did not enter their motion to alter or amend the judgment until February 26, 1997. The court entered its amended judgment on June 4, 1997.

6. A similar map, which included Gray's New Road, was filed as an attachment to the original complaint.

Canyon property, and that to force the Hills to traverse the adjoining property would run counter to the clear language of the easement. The court noted the defendants did not allege that the southern portion of the easement had been abandoned or otherwise relinquished or waived by the Hills due to nonuse. The court additionally noted that testimony presented during the trial established the fact that Gray's New Road provided access from the county road to the purple road. The court accordingly altered the fixed location of the Hill access road to include Gray's New Road; so, instead of entering Mr. Horst's property from the east, it enters his property from the county road, travels north, and connects with the purple road.

■ After carefully reviewing the record, we believe the district court acted properly. The original judgment was patently ambiguous. It purported to validate the Hill easement, which on its face grants access from the county road to the Hill property, yet the map introduced at trial and attached to the judgment did not reflect the entire servient estate. We do not perceive the omission in the original judgment as reflecting a deliberate choice on the part of the court, which would appropriately be cured by an appeal.

The court appropriately modified the earlier judgment so it would be in conformance with the intent expressed therein: to fix the location of the Hills' access easement from the county road to their property.

We hold the court did not act outside its authority when it amended the original judgment to clarify and correct a patent ambiguity. The amended judgment is, therefore, affirmed.

## CONCLUSION

The district court correctly determined that the Hills' easement to access their property is valid and enforceable. The court's decision to fix the location of the easement is in accordance with law, and the chosen location reflects the parties' intent, as evidenced by the granting instrument and historic use. The Judgment and Amended Judgment are affirmed in accordance with this opinion.