2002 WY 34

**Brenda BAKER, Appellant (Defendant),**

**v.**

**Garland PIKE, Trustee for the Pike Family Trust, Appellee (Plaintiff).**

**No. 00–322.**

Supreme Court of Wyoming.

Feb. 26, 2002.

---

538

Gregory A. Phillips of Mead & Phillips, Cheyenne, WY, Representing Appellant.

Tracy L. Zubrod of Zubrod Law Offices, P.C., Cheyenne, WY, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] This case requires that we determine whether a 1904 deed created an easement appurtenant, and not merely a license, on the disputed strip of land. Having determined that the 1904 deed created an easement appurtenant, we affirm.

## *ISSUE*

[¶ 2] Appellant presents the statement of the issue:

> Did the District Court err in determining that the 1904 deed created an easement appurtenant, and not merely a license, on the disputed strip of land?

## *FACTS*

[¶ 3] The facts of this case are relatively simple and undisputed. This case focuses on a ten-foot strip of land (shaded area below) located on the northeast quarter of Block 259 in the City of Cheyenne. The southeast boundary of Lots 1 and 2 abut a city alley. In the early 1900s, Lots 1 and 2 were realigned into three residential parcels fronting Seymour Avenue. This isolated the most southeastern lot (presently owned by Appellant Baker) fully abutting the city alley and the middle lot (presently owned by Appellee Pike) from the city alley and without street access to the rear of the property. In order to allow access to the rear of the properties, the landowners created a ten-foot alley (shaded area below) that has been used since 1904. The following representation, taken from defendant's exhibit, should be helpful in gaining a perspective of the layout of the land at issue.

MAXWELL STREET

SEYMOUR AVENUE

[¶ 4]  Pike is the trustee for the Pike Family Trust.  The Pike Family Trust (hereafter "Pike") owns the middle forty-four feet of Lots 1 and 2 of Block 259, commonly known as 2018 Seymour Avenue.  Ms. Baker owns the south forty-four feet of Lots 1 and 2 of Block 259, commonly known as 2014 Seymour Avenue.  Thus, Pike and Baker are neighbors and the ten-foot alley exists across the western edge of the parties' property.  The ten-foot alley continues past Pike's property to allow access to 2020 Seymour, but this portion of the alley is not at issue in the present appeal because it has been conveyed to the City of Cheyenne.

[¶ 5]  On September 2, 1904, Baker's predecessor in interest conveyed all of the south forty-four feet of Lots 1 and 2 in Block 259, excepting that "[e]ach of the above named parties agree to maintain and keep open a ten foot alley on the west line of Lot Two (2)."  This easement, as stated in the Warranty Deed, was binding upon "his heirs and assigns" forever.  This property changed ownership six times between 1904 and 1996 without memorializing the private alley in writing.  Finally, Baker obtained the property in 1996, subject to "all recorded easements pertaining to the conveyed real property."  Further, Baker's closing documents associated with the purchase of 2014 Seymour Avenue referenced an easement.  Specifically, the title insurance policy addressed the exis-

tence of an "[e]asement, 10 feet in width, for alley on the west line of Lot 2, as contained in instrument recorded September 2, 1904."

[¶ 6]  Regarding Pike's property, on September 3, 1904, the middle forty-four feet of Lots 1 and 2 in Block 259 were conveyed with the identical exception: "[e]ach of the above named parties agree to maintain and keep open a ten foot alley on the west line of Lot Two (2)."  Again, the Warranty Deed provided that the easement was binding upon "his heirs and assigns" forever.  This parcel was sold in 1908 and 1911, each time with the written proviso that the parties "agree to maintain and keep open a ten foot alley" on the west line of Lot 2.  When the property was sold in 1943, the language pertaining to the easement was removed.  Subsequently in 1965, the parcel was conveyed to Pike's parents, again without mentioning the alley.  Pike took title to the land in 1988, without mention of the alley; however, in 1999, Pike conveyed title to the Pike Family Trust "[s]ubject to covenants, easements and restrictions of record."

[¶ 7]  On November 5, 1999, Baker installed a permanent chain-link fence across the ten-foot alley that effectively denied Pike ingress and egress to his garage.  Pike uses the alley to enter his garage and has a difficult time entering his garage from the north side of the alley.  Prior to Baker in-

stalling the fence, Pike regularly used the southern entrance of the alley in order to enter his garage.[1]

[¶ 8] Pike filed a Complaint to Enforce Easement against Baker on April 14, 2000. On July 14, 2000, the district court held a hearing; the hearing was ultimately continued on August 31, 2000, due to concerns over Mr. Pike's health. On September 8, 2000, the Honorable Judge Kalokathis issued a decision letter finding in favor of Pike as to the easement issue and filed an "Order Enforcing Easement" on October 2, 2000. This timely appeal followed.

### STANDARD OF REVIEW

[¶ 9] "The factual findings of a judge are subject to a broader scope of review than a jury verdict, and the appellate court may examine all of the properly admissible evidence in the record." *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 586 (Wyo.1999) (citing *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993)). The findings of fact made by the district court will not be set aside unless clearly erroneous. *Hopper*, 861 P.2d at 538. The district court's conclusions of law are not binding on the reviewing court and are reviewed *de novo*. *Id.; Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403, 407 (Wyo.1992). Finally, the meaning of an easement will be derived from its language; if the language is not ambiguous and the intent of the parties can be determined, that should be done as a matter of law. *R.C.R.*, 978 P.2d at 586 (citing *Edgcomb v. Lower Valley Power & Light, Inc.*, 922 P.2d 850, 854 (Wyo.1996)).

### DISCUSSION

[¶ 10] The district court, while deciding in favor of the existence of an easement, failed to specify which type of easement existed on the disputed property. We now affirm the district court's decision, finding that the 1904 deeds created an appurtenant easement.

[¶ 11] Generally, an easement is a "nonpossessory interest in land of another." Jon W. Bruce and James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 1:1 (2001) (hereinafter *Bruce and Ely* ). An easement grants the holder the right to a limited use or enjoyment over another's property. *Mueller v. Hoblyn*, 887 P.2d 500, 504 (Wyo.1994). An easement differs from a license in that a license generally grants permission to do something on another's property. *Bruce and Ely* at § 1:4. Since permission to do something can be easily rescinded, the landowner usually can terminate the license. *Id.* Alternatively, easements are generally irrevocable interests in land. *Id.*

[¶ 12] An easement is appurtenant "when the easement is created to benefit and does benefit the possessor of the land in his use of the land." *Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 975 (Wyo. 1974); *R.C.R.*, 978 P.2d at 586. This means that the easement must be created to benefit the owner of the easement as a possessor of a particular parcel of land. An easement is in gross "when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor." *Weber*, 519 P.2d at 975; *R.C.R.*, 978. P.2d at 586. This means that the owner of the easement maintains ownership regardless of possession of any individual parcel of land. Finally, there is a strong preference to construe an easement as appurtenant rather than in gross. *Delgue v. Curutchet*, 677 P.2d 208, 212 (Wyo.1984) (citing *Weber*, 519 P.2d at 975).

[¶ 13] In *R.C.R.*, this court identified certain "badges" of appurtenant easements: whether the language indicates it was created to benefit a specific parcel of land; whether the easement creates a perpetual grant for ingress and egress; and whether the easement benefits the landowner in its use of the land and is not limited to a specific landowner. 978 P.2d at 586. In the instant case, 2018 Seymour Avenue was isolated from the

---

1. The record indicates that Pike previously attempted to bar access through the alley by installing gates and by parking cars directly in the alley. These prior actions, however, are not at issue in the case at bar; Pike testified that all gates have been removed and he no longer parks vehicles or otherwise blocks the alley for any purpose.

city alley and without street access to the rear of the property. The 1904 deeds contain the language "agree to maintain and keep open a ten foot alley on the west line of Lot Two (2)." This indicates that the ten-foot alley was not created to benefit any particular person. Indeed, the easement allows ingress and egress to the rear portion of the property, thereby benefiting the easement owner as the possessor of that tract of land. The deeds further state that the easement is binding upon "his heirs and assigns" forever. This language indicates a perpetual grant for use of the property that is not limited to a specific landowner. Therefore, the 1904 deed language can reasonably be construed to create an easement appurtenant.

[¶ 14] "An easement appurtenant is transferred with possession of the dominant property even if it is not mentioned in the document of transfer." *R.C.R.*, 978 P.2d at 586 (quoting *Delgue*, 677 P.2d at 212). The 1904 deeds contain no language of limitation, rather they specify that the easement be binding upon "his heirs and assigns" forever. Thus, the ten-foot alleyway described in the 1904 deeds was an easement appurtenant that survived all subsequent transfers regardless of any subsequent deed.

[¶ 15] In 1914, this court decided a strikingly similar case in *Forde v. Libby*, 22 Wyo. 464, 143 P. 1190 (1914). As in the present appeal, the lots were realigned, isolating the middle forty-four feet from access to the alley or to the rear of the property. The parties orally agreed to maintain an alley, and subsequent improvements were made to the alley. The defendants attempted to close the alley, and the plaintiffs then sought to prohibit the defendants from obstructing the alleyway used by the plaintiffs to access their property. This court held "[t]he lots as rearranged were known and intended by the parties to be used for residence purposes without limit as to time, and it will be presumed that the parties intended the alley to be of as permanent a character as the use and occupancy of the lots." *Forde*, 143 P. at 1193.

[¶ 16] Appellant Baker distinguishes *Forde* on five distinct grounds. First, the owner of Lot 3, who was a party to the original agreement, claimed access to the *Forde* alley, whereas in the present appeal neither party was privy to the original agreement. Second, the defendant in *Forde* attempted to obstruct the alley even though his deed specifically identified the alley. Baker's deed, however, did not contain language specifically identifying the alley. Third, the *Forde* deed provided "a perpetual right of way of the owners for the time being, and their heirs and assigns." *Id.* at 1191. Baker's deed fails to identify and reserve a perpetual right for the alley. Fourth, the court in *Forde* relied on the fact that many improvements had been made and monies spent in reliance on the alley, whereas Pike failed to introduce evidence of any improvements made. Finally, the parties in *Forde* knew of the terms of the alley and were aware of the need for access for pulling coal. In the present appeal, no coal teams are currently required.

[¶ 17] As to Baker's first and third claims, the 1904 deeds stated that the easement be binding upon "his heirs and assigns" forever. Thus, the easement would be binding upon Baker and Pike, regardless of whether they were privy to the original agreement.

[¶ 18] Regarding Baker's second claim, while Baker's deed does not make specific mention of the easement, Baker took title to the land subject to "all recorded easements pertaining to the conveyed real property." Further, Baker's closing documents addressed an "[e]asement, 10 feet in width, for alley on the west line of Lot 2, as contained in instrument recorded September 2, 1904." Thus, while Baker's deed may not have contained specific language, Baker was on notice as to the existence of the private alley. Moreover, Baker testified that she knew that the easement existed at the time she took title to the property.

[¶ 19] As to Baker's fourth claim of lack of evidence that improvements have been made to the alley, Baker herself introduced evidence that monies were spent and improvements made in reliance on the alley. Indeed, the photos contained in the

record show that the alley has been paved. As to Baker's claim that the current parties no longer require access to the alley for purposes of pulling coal, Pike uses the easement for ingress and egress to the rear portion of his property. As previously discussed, the language of the 1904 deeds created an easement appurtenant because the owner of the easement benefits as the possessor of the land—the easement is not restricted to a certain owner of the land. Finally, "the scope of an easement is not limited to the uses contemplated to be made at the time of or immediately after its creation." *Edgcomb*, 922 P.2d at 857 (citing *Jones v. Edwards*, 219 Or. 429, 347 P.2d 846, 848 (1959)). Absent contrary intent, the uses are subject to adjustment logical with normal development of the properties. *Id.* Thus, Pike's current use of the property is reasonable, regardless of the uses originally foreseen by the parties creating the easement.

[¶ 20] Appellant then claims that the 1904 language created a license, and the question before the court is whether or not that license was revocable. In determining whether an easement or a license exists, the critical factor to consider is the parties' intent, identified by the manner in which the right was created, the nature of the right created, the duration of the right, the amount of consideration given for the right, and whether there is a reservation of power to revoke the right. *Bruce and Ely, supra,* at § 1:5.

[¶ 21] In the current case, the easement was contained in the 1904 conveyance deeds. Since the property was isolated from the city alley, the easement was created to allow ingress and egress to the rear portion of the property. As to the nature of the right granted, the deeds require "[e]ach of the above named parties agree to *maintain* and keep open a ten foot alley." (Emphasis added.) Further, the deeds provided that the easement is binding upon not only the current landowner but also upon all heirs and assignees.² Finally, the 1904 deeds do not contain a reservation of the power to revoke

the right to ingress and egress. Thus, the language of the 1904 deeds created an easement and not a license.

### CONCLUSION

[¶ 22] The district court did not err in ruling that the 1904 deed created an easement, and we find the easement to be appurtenant.

[¶ 23] Affirmed.

---

2. Baker argues that the alley was limited to "above named parties." The entire deeds, however, are binding upon "his heirs and assigns" forever.