# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 58

**APRIL TERM, A.D. 2020**

**May 6, 2020**

|  |  |
|---|---|
| TIPHANY L. GAYHART, Trustee of the Tiphany L. Gayhart Living Trust dated October 1, 2008, <br><br> Appellant <br> (Plaintiff), <br><br> v. <br><br> JACK O. CORSI and JACK E. CORSI, Trustees of the Henry's Mountain Land Trust; SEAN E. COOPER and AMY COOPER, husband and wife, and as individuals; GALE D. HOLTBY and BARRY HOLTBY, husband and wife, and as individuals; BRANDON R. SCOFFIELD and HEATHER CHERIE SCOFFIELD, husband and wife, and as individuals; JOSEPH P. DWYER and LAUREN DWYER, husband and wife, Trustees of the Dwyer Family Trust, dated April 23, 2009; MICK C. RAMMELL and KELSI LASHEA RAMMELL, husband and wife, and as individuals; JUSTIN D. SANDNER and TERESA C. SANDNER, husband and wife, and as individuals; PAIGE SAVARESE; BILLY D. ADAMSON; and KATHLEEN B. SANFORD, <br><br> Appellees <br> (Defendants). | S-19-0186 |

*Appeal from the District Court of Lincoln County*
The Honorable Joseph B. Bluemel, Judge

*Representing Appellant:*
    James K. Sanderson, Sanderson Law Office, Afton, Wyoming.

*Representing Appellees except Jack E. Corsi and Jack O. Corsi, who did not appear:*
Edward S. Bushnell, Mulligan Law Office, P.C., Jackson, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Tiphany L. Gayhart, trustee of the Tiphany L. Gayhart Living Trust, claimed to have an easement over a private road (Teala Drive) in a subdivision even though her property lies outside the subdivision.  The district court concluded Ms. Gayhart did not have such easement.  We affirm.

## ISSUE

[¶2]    Did the district court err in concluding Ms. Gayhart did not have a valid easement over Teala Drive?

## FACTS

[¶3]    In the 1990s, Jack O. and Jack E. Corsi (the Corsis), trustees of the Henry's Mountain Land Trust, owned approximately 160 acres of land in Lincoln County:  the SW1/4 of Section 13, Township 35 North, Range 119 West of the 6th P.M.[1]  In 1996, they divided the property into sixteen 10-acre lots.  They used thirteen of the lots to create the Henry's Mountain Estates subdivision.  The Lincoln County Commissioners approved the subdivision, and the Corsis recorded the subdivision plat.

[¶4]    The plat map shows all sixteen lots of the 160-acre parcel.  However, three of the lots are marked "NOT PART OF SUBDIVISION."  Those lots are located in the southeast, southwest and northwest corners of the 160-acre parcel.  When the plat was recorded, the southeast and southwest lots had been sold to third parties.  The Corsis retained ownership of the lot in the northwest corner, which abuts Lots 3 and 4 of the subdivision.  Between 1996 and 2002, the Corsis sold all thirteen lots in the subdivision to third parties.  In 2006, they sold the northwest parcel outside the subdivision to Ms. Gayhart.

[¶5]    The entire 160-acre parcel is bordered on the south and west by county roads.  There are three private roads in the subdivision which are shown on the plat—Henry's Mountain Road, Teala Drive and Anne Road.  Relevant here, Teala Drive is sixty feet wide and runs north-south through the middle of the subdivision from Lincoln County Road 113 to the intersection of Lots 2, 3, 5, and 6.  It encumbers thirty feet of the eastern boundaries of Lots 5, 10 and 12 and thirty feet of the western boundaries of Lots 6, 9 and 13.  The plat map also shows a sixty-foot access and public utility easement encumbering thirty feet of the northern boundaries of Lots 4 and 5, and thirty feet of the southern boundary of Lot 3 (hereinafter Access Road).  A visual (not to scale) of Teala Drive and the Access Road in relation to the subdivision (Lots 1-13) and Ms. Gayhart's property is helpful.

---

[1] Jack O. Corsi is deceased.  We will nevertheless continue to refer to the trustees of the Henry's Mountain Land Trust as the Corsis.

1



[¶6]    The subdivision plat contains a "Certificate of Owners," which states in relevant part:

> We the undersigned, do hereby certify that the subdivision of a part of the SW1/4 of Section 13, T35N, R119W, Lincoln County, Wyoming . . . is [made] with the free consent and in accordance with the desires of the undersigned owners and proprietors of said lands; that the name of the subdivision shall be HENRY'S MOUNTAIN ESTATES; that Henry's Mountain Road, Teala Drive and Anne Road, as shown on this plat, are private roads with a non-exclusive right-of-way granted to each lot owner;
>
> . . . .

2

that a right of ingress and egress and public utilities is reserved unto the grantors, their heirs, successors and assigns along Henry's Mountain Road;

that a right of ingress and egress and public utilities is reserved unto the grantors, their heirs, successors and assigns along the south thirty (30) feet of Lot 3 and the north thirty (30) feet of Lots 4 and 5;

that a right of ingress and egress and public utilities is reserved unto the grantors, their heirs, successors and assigns along the west thirty (30) feet of Lots 4 and 11;

. . . .

that the subdivision is subject to easements of sight and of record; that the Subdivision is subject to Covenants and Restrictions of record . . . [.]

[¶7]    When they recorded the plat, the Corsis also recorded a "Declaration of Covenants, Conditions and Restrictions for Henry's Mountain Estates" (Covenants).  Section 11(a) of the Covenants states the Corsis "hereby grant[] and reserve[] for [their] benefit and the benefit of all owners the following easements on the property:

(a)    An easement for ingress and egress access on, over and across the Common Roads within the property which is to be private, for the use and benefit of, and appurtenant to the property, all lot owners, their guests, invitees and licensees and other individuals or entities as may from time to time be granted permission to use the Common Roads by the Board of the Association.

The parties concede Teala Drive is a Common Road.

[¶8]    In 2008, two years after they conveyed the northwest lot to Ms. Gayhart and six years after they transferred all lots in the subdivision to third parties, the Corsis executed a document purporting to give Ms. Gayhart an easement for ingress, egress and all utilities along Teala Drive.  Three months later, in February 2009, they purported to give her an easement encumbering thirty feet of the northern boundary of Lot 4 (part of the Access Road).

[¶9]    Subdivision lot owners denied Ms. Gayhart access across Teala Drive and the Access Road.  She sued the Corsis and the owners of Lots 2, 3, 4, 5, 6, 9, 10, 12, and 13 (Lot Owners) seeking an order declaring her to have valid easements over Teala Drive and the Access Road.  She also sought quiet title to these easements and an injunction

3

prohibiting the Corsis and the Lot Owners from impeding, blocking or prohibiting her access to her property over the easements. The Lot Owners filed a counterclaim seeking a declaration that Ms. Gayhart did not have valid easements over Teala Drive or the Access Road. Ms. Gayhart and the Lot Owners filed cross-motions for summary judgment.

[¶10] The district court granted in part and denied in part the parties' motions. It decided Ms. Gayhart had a valid easement over the Access Road but not over Teala Drive. Ms. Gayhart appealed from the latter decision. The Lot Owners did not file a cross-appeal from the district court's decision that Ms. Gayhart has a valid easement over the Access Road, and explicitly state in their brief they are not challenging that decision. The only issue before us is whether Ms. Gayhart has a valid easement over Teala Drive.[2]

## STANDARD OF REVIEW

[¶11] We generally review a district court's grant of summary judgment as follows:

> We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. *Id.* The record is assessed from the vantage point most favorable to the party opposing the motion . . ., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.*

*Wyoming Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 10, 432 P.3d 910, 914 (Wyo. 2019) (quoting *Reichert v. Daugherty*, 2018 WY 103, ¶ 11, 425 P.3d 990, 994 (Wyo. 2018)). We also review de novo the district court's interpretation of covenants imposing restrictions or conditions on the use of land. *Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 25, 393 P.3d 1279, 1289 (Wyo. 2017) (citing *Wimer v. Cook*, 2016 WY 29, ¶ 21, 369 P.3d 210, 218 (Wyo. 2016)).

---

[2] Although the Corsis were served with the complaint and Ms. Gayhart sought summary judgment against all of the defendants, the Corsis did not file an answer, respond to Ms. Gayhart's summary judgment motion, or file their own summary judgment motion. Indeed, they did not participate in the proceedings other than Jack E. Corsi filing an affidavit in support of Ms. Gayhart's motion. The district court's order on the parties' summary judgment motions, however, appears to apply to all defendants. The Corsis also did not appear or participate in this appeal.

4

**DISCUSSION**

[¶12]  Neither party argues there is a disputed issue of material fact to be decided at trial. Both parties assert the subdivision documents are unambiguous and we agree.  Resolution of this case, then, depends entirely on interpretation of the subdivision plat and Covenants.

### 1.  District Court's Decision

[¶13]  The district court decided § 11(a) of the Covenants reserved to the Corsis "[an] easement for ingress and egress access on, over and across the Common Roads within the property," including Teala Drive.  Although it indicated the easement over Teala Drive was an appurtenant easement, which is normally transferrable with the dominant estate, it nevertheless concluded the Corsis could not transfer the easement to Ms. Gayhart because it was a "personal" easement.

[¶14]  We agree with the district court that Ms. Gayhart does not have a valid easement over Teala Drive, but for different reasons.  It is unnecessary to review the district court's conclusion that the Teala Drive easement was both appurtenant and "personal," and it is unnecessary to review the district court's approach to transferability.  As we will explain, the plain language of the easement and the Covenants demonstrates the easement over Teala Drive was to benefit the subdivision, not property outside the subdivision.  Ms. Gayhart's property lies outside the subdivision.  The Teala Drive easement clearly is appurtenant to lots in the subdivision and is transferrable with those lots.  The problem for Ms. Gayhart is that the easement is not appurtenant to her property and could not be transferred apart from the subdivision.

### 2.  The Teala Drive Easement

[¶15]  "An easement is 'an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property.'"  *Gumpel,* ¶ 68, 393 P.3d at 1297 (quoting *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 13, 327 P.3d 732, 737 (Wyo. 2014)).  "The principles of contract construction apply to construction of an easement." *Lozier v. Blattland Invs., LLC*, 2004 WY 132, ¶ 9, 100 P.3d 380, 383-84 (Wyo. 2004) (citation omitted).

> "When construing an easement, we seek to determine the intent of the parties to the easement ... and begin by attempting to glean the meaning of the easement from its language." *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 586 (Wyo. 1999); *See also Restatement (Third) Property* (Servitudes) § 4.1 (2000). If the language of the easement is clear and unambiguous, we interpret the easement as a matter of law, without resorting to the use of extrinsic evidence to determine

the parties' intent. *R.C.R.*, 978 P.2d at 586. If, however, the language is ambiguous, then the court looks to extrinsic evidence to ascertain the parties' intent. *Hasvold* [*v. Park County School District No. 6*, 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo. 2002)]; *R.C.R., Inc.*, 978 P.2d at 586; *Edgcomb v. Lower Valley Power & Light, Inc.*, 922 P.2d 850, 855 (Wyo. 1996).

*Pokorny v. Salas*, 2003 WY 159, ¶ 23, 81 P.3d 171, 177-78 (Wyo. 2003). Similar rules apply when interpreting covenants. *See Reichert*, ¶ 15, 425 P.3d at 995. *See also, Omohundro v. Sullivan*, 2009 WY 38, ¶ 9, 202 P.3d 1077, 1081 (Wyo. 2009).

[¶16] Section 11(a) of the Covenants reserved for the Corsis (and granted to lot owners) an easement over the Common Roads in the subdivision, including Teala Drive. It states the easement "is to be private, *for the use and benefit of, and appurtenant to the property*, all lots owners*,* their guests, invitees and licensees and other individuals or entities as may from time to time be granted permission to use the Common Roads by the Board of the Association." (Emphasis added).

[¶17] Definitions of the terms found in § 11(a) confirm the easements for the Common Roads, including Teala Drive, are exclusively attached to and provide access to the lots in the subdivision. The Covenants define "Common Roads" as "the private roadway system *within the property which provides access to individual lot lines*." (Emphasis added). "Owner" is defined as "*the record owner of a lot*…." (Emphasis added). "'Lot' means any portion *of the property* as shown on a recorded plat map and described as such, or as created by a lot combination." (Emphasis added). "[P]roperty" means "the real property described in Section 1." Section 1 of the Covenants, in turn, defines the property as:

> *Henry's Mountain Estates* which is located in the SW1/4 of Section 13, Township 35 North, Range 119 West, 6th P.M., Lincoln County, Wyoming . . . . The property has been platted as []Final Plat Henry's Mountain Estates a Subdivision within the SW1/4, Section 13, T35N, R119W, Lincoln County, Wyoming, with the plat having been filed . . . on the 4th day of November, 1996 as Plat number 371.

(Emphasis added). The definition of property does not include Ms. Gayhart's property.

[¶18] The easement over Teala Drive is clear and unambiguous. It specifically benefits the subdivision and the owners of the lots therein. It was not intended to benefit property outside the subdivision and has no language indicating any connection with property outside the subdivision. The Covenants as a whole bear this out. Section 1 states their purpose is "to preserve and maintain the natural character and value *of the property for the*

*benefit of all of the owners of the property or any part thereof*." (Emphasis added). Section 2 states they "shall *run with the property and any lot thereof*, and *shall be binding upon all parties having or acquiring any legal and equitable interest in or title to [the] property*, and *shall inure to the benefit of all of the owners of the property or any part thereof*." (Emphasis added). The Covenants, including the easement over Teala Drive, apply to and benefit only the subdivision and the owners of the lots therein. Ms. Gayhart's property lies outside the subdivision.

[¶19] Jack E. Corsi stated in an affidavit that it was the Corsis' intent "to reserve an easement for ingress and egress access on, over and across TEALA DRIVE for the benefit of the [Gayhart] lot" and "that TEALA DRIVE be used to access [the Gayhart] lot and connect to the easements reserved for said lot over Lots 3, 4 and 5 of the Subdivision [the Access Road]." Evidence of a declarant's subjective intent, however, is not relevant or admissible in interpreting contracts, including covenants. *See Omohundro*, ¶ 24, 202 P.3d at 1084. *See also, Thornock,* ¶ 20, 379 P.3d at 181.

### 3. Appurtenant or In Gross

[¶20] Easements may be appurtenant or in gross. "'An easement is appurtenant to the land when the easement is created to benefit and does benefit the possessor of the land in his use of the land.'" *Hasvold*, ¶ 14, 45 P.3d at 638 (quotations omitted). "An appurtenant easement is tied to the dominant estate, is conveyed with a conveyance of that estate, and cannot be conveyed independently thereof." *Box L Corp. v. Teton Cty. ex rel. Bd. of Cty. Comm'rs of Teton Cty.*, 2004 WY 75, ¶ 12, 92 P.3d 811, 815 (Wyo. 2004) (citations omitted). "[A]n easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor.'" *Hasvold*, ¶ 14, 45 P.3d at 638 (quotations omitted). "Traditionally, easements in gross, having no dominant estate to which to be attached, were considered personal to their holder and, as such, non-assignable." *Box L Corp.*, ¶ 12, 92 P.3d at 815 (citation omitted). "An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant." *R.C.R., Inc.*, 978 P.2d at 586 (citation omitted).

[¶21] We have identified several "badges" of an appurtenant easement, including language indicating:

> (1) that the easement was created to benefit a specific tract of land; (2) that the grant was for a perpetual right-of-way for ingress and egress; (3) that the grantee has the right to inspect and maintain the easement; (4) that the right is not limited to the possessor personally; (5) that the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) that the easement document does not contain any

7

limitations on the transferability of the easement to future transfers of both the dominant and servient estates.

*Hasvold*, ¶ 21, 45 P.3d at 640 (citing *R.C.R., Inc.*, 978 P.2d at 586). *See also, Gumpel*, ¶ 68, 393 P.3d at 1297-98.

[¶22]   The easement over Teala Drive bears all the "badges" of an appurtenant easement. As explained above, it was created to benefit a specific tract of land, the subdivision. It was for a perpetual right-of-way for ingress and egress. Section 11(a) of the Covenants states the easement is "for ingress and egress access on, over and across the Common Roads . . . ." Section 14 makes the Covenants perpetual, unless amended or revoked. It states the Covenants "shall continue and remain in full force and effect after the date of [their] recording . . ., subject to the right of amendment or modification provided in Section 13 above. [The Covenants] shall remain in full force and effect unless revoked by the owners of 80% o[r] more of the lots within the development as provided in Section 13 above." There has been no amendment or revocation.

[¶23]   Neither the easement nor the Covenants give the Corsis the right to inspect and maintain the Common Roads. That right was given to the Homeowner's Association, which consists of lot owners. The lot owners are grantees of the easement, and the Corsis are no longer lot owners.

[¶24]   The easement over Teala Drive is not limited to the Corsis personally but is provided to all owners of lots within the subdivision and their successors.

[¶25]   While § 11(a) does not expressly extend the right to use Teala Drive to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives, the Covenants provide the subdivision "and any part thereof, shall be owned, sold, conveyed, encumbered, leased, used, occupied and developed subject to the [Covenants]" and the Covenants "shall run with the [subdivision] and any lot thereof, and shall be binding upon all parties having or acquiring any legal and equitable interest in or title to property, and shall inure to the benefit of all owners of the property and any part thereof." In other words, the Covenants, including the easement over Teala Drive contained therein, are to pass with the subdivision and to any owners of the subdivision or parts thereof. *See Reichert*, ¶ 13, 425 P.3d at 994 ("A restrictive covenant that runs with the land is one that 'inures to the benefit of, or must be fulfilled by, whatever party holds the land at the time when fulfillment is due.'") (quoting *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 12 n.4, 191 P.3d 125, 130 n.4 (Wyo. 2008)).

[¶26]   Finally, the Covenants do not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates. Indeed, they state just the opposite—any transfer of the subdivision or any lot therein will be subject to the Covenants (including the easement over Teala Drive) and the Covenants bind any owner

of a lot within the subdivision and any future owners. This conclusion is consistent with the general rule that covenants are appurtenant. *See Brumbaugh v. Mikelson Land Co.*, 2008 WY 66, ¶ 12, 185 P.3d 695, 701 (Wyo. 2008) ("Covenants may also create easements. Such covenants are typically deemed to be appurtenant to and run with the land.") (citing 20 Am.Jur.2d *Covenants, Conditions and Restrictions* § 21 (1995)).

[¶27] Because the easement the Corsis reserved over Teala Drive is an appurtenant easement tied to the subdivision, it "is conveyed with a conveyance of [the subdivision], *and cannot be conveyed independently thereof*." *Box L Corp., ¶* 12, 92 P.3d at 815-16 (citations omitted) (emphasis added). *See also, Baker v. Pike*, 2002 WY 34, ¶ 14, 41 P.3d 537, 542 (Wyo. 2002) ("An easement appurtenant is transferred with possession of the dominant property even if it is not mentioned in the document of transfer."). As a result, when the Corsis sold the last lot in the subdivision in 2002, their easement over Teala Drive went with it. They had no easement over Teala Drive when they sold Ms. Gayhart her lot in 2006 or when they purported to transfer an easement over Teala Drive to her in 2008. Not only that, because it was an appurtenant easement, the easement over Teala Drive could not be conveyed independent of the subdivision. Ms. Gayhart admits her property lies outside the subdivision. The easement the Corsis had over Teala Drive could not have been conveyed to her with the sale of her property.

### 4. Ms. Gayhart's Arguments

[¶28] Ms. Gayhart advances three arguments as to why the Corsis intended Teala Drive to serve as an access easement to her property. First, she argues that at the time the Corsis recorded the plat and Covenants, they owned all of the lots within the subdivision as well as her lot. That is immaterial. By their terms, the Covenants, which contain the Corsis' reservation of the easement over Teala Drive, apply solely to the subdivision, not to any land outside the subdivision. The easements created by the Covenants are appurtenant only to the lots in the subdivision. Again, Ms. Gayhart admits her property is not part of the subdivision.

[¶29] Second, although she concedes her property is not within the subdivision, Ms. Gayhart nevertheless claims her property is within the definition and description of "property" in the Covenants. Ms. Gayhart's property is clearly not within the definition or description of "property" in the Covenants. As explained above, "property" is defined as the subdivision. When confronted with this definitional conundrum at oral argument, Ms. Gayhart's counsel claimed her property was within the definition of "property" in the Covenants because it is depicted on the plat map. But her property on the plat is expressly labeled "NOT PART OF SUBDIVISION."

[¶30] Finally, Ms. Gayhart argues Teala Drive connects directly with the easement she has over the Access Road. We have not been asked to review the validity of that easement. Nevertheless, the easement over the Access Road was reserved in "The Certificate of

9

Owners." The "Certificate of Owners" reserved a right of ingress and egress and public utilities to "the [Corsis], their heirs, successors and assigns" "along Henry's Mountain Road," "along the south thirty (30) feet of Lot 3 and the north thirty (30) feet of Lots 4 and 5," and "along the west thirty (30) feet of Lots 4 and 11." Notably, it did not reserve any such right along Teala Drive. The reservation of the easement over Teala Drive occurred in the Covenants. As the district court correctly noted, the easement over the Access Road was "reserved in a different manner and using different words than the Teala Drive easement." As a result, the mere fact Ms. Gayhart may have an easement over the Access Road—an issue on which we do not opine—does not mean she has one over Teala Drive, even if they are connected.

## CONCLUSION

[¶31] We affirm the district court's decision that Ms. Gayhart does not have a valid easement over Teala Drive.