2007 WY 161

Betty MATHISEN, Harold Shipley, Patricia Brown, Vicki Ruiz, Bobby Shipley, Jr., Jimmy Shipley, Monica Miller and Robin Shipley, Appellants (Plaintiffs),

v.

THUNDER BASIN COAL COMPANY, LLC, a Delaware Limited Liability Company, Jacobs Ranch Coal Company, a Delaware corporation, Consol Energy, Inc., a Delaware corporation and Consolidation Coal Company, a Delaware corporation, Appellees (Defendants).

No. 06–276.

Supreme Court of Wyoming.

Oct. 11, 2007.

Representing Appellants: Patrick Dixon, Casper, Wyoming.

Representing Appellee Thunder Basin Coal Company: Thomas J. Davidson of Dorsey & Whitney LLP, Cheyenne, Wyoming.

Representing Appellees Jacobs Ranch Coal Company, Consolidation Coal Company and Consol Energy, Inc.: Mark D. Taylor, Gillette, Wyoming; Thomas P. Johnson and Andrea Wang of Davis Graham & Stubbs LLP, Denver, Colorado. Argument by Mr. Johnson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] The appellants' predecessors in interest conveyed 120 acres in Campbell County to Appellee Consolidation Coal Company (Consol). Even though the federal government owned the coal underlying the property and Consol did not have a right to mine it, the deed stated that part of the consideration for the transfer included a "surface royalty" for all coal removed and sold "by Consol" from the property. Consol never acquired the right to mine the coal underlying the property; consequently, it never removed any coal or paid any surface royalty to the appellants or their predecessors. Appellee Jacobs Ranch Coal Company (Jacobs Ranch) eventually acquired title to the property. Appellee Thunder Basin Coal Company, LLC (TBCC) ultimately obtained the federal lease to mine the coal, leased the surface property from Jacobs Ranch, and began mining operations. The appellants filed a complaint for payment of the surface royalty contemplated in the deed. The district court concluded, as a matter of law, the appellees were not obligated to pay the surface royalty, and we affirm.

## ISSUES

[¶ 2] Appellants raised the following issues on appeal:

A. Does the phrase "for all coal mined, removed and sold by Consol" create a material condition precedent to performance by [a]ppellees?

B. Is the "surface royalty" provision a covenant that runs with the land?

C. Is the Warranty Deed ambiguous? and

D. Is TBCC a successor in interest to Consol?

[¶ 3] Appellees filed two separate briefs on appeal. Jacobs Ranch, Consol, and Consolenergy, Inc., filed a joint brief and did not specifically identify issues on appeal. TBCC presented the issues as:

A. Whether the district court correctly determined that Consol's personal obligation to pay for coal mined by Consol did not run with the land to any party who ever mines coal from beneath the property?

B. Whether the district court correctly determined that the warranty deed between the Shipleys and Consol is clear and unambiguous?

### FACTS

[¶ 4] On June 19, 1975, Harold and Hattie Shipley conveyed a 120 acre surface estate in Campbell County (the Property) to Consol via a warranty deed. The underlying coal was owned by the federal government and the parties agree that, at the time of the sale, Consol owned no interest in it. Even so, as part of the consideration for the Property, Consol agreed to pay a "surface royalty" to the Shipleys on the coal it removed and sold from the Property.

[¶ 5] Consol never acquired the right to mine the coal beneath the Property and never removed any coal. Consol sold the Property in 1982 and, after that, title to the Property transferred several times, eventually to Jacobs Ranch.[1] TBCC leased the coal from the federal government and the Property from Jacobs Ranch and, after 1998, began mining the coal.

[¶ 6] Meanwhile, whatever surface royalty interest the Shipleys retained was conveyed to four of their children—Betty Mathisen, Harold Shipley, Patricia Brown and Vicki Ruiz—and four grandchildren—Bobby Shipley, Jr., Jimmy Shipley, Monica Miller and Robin Shipley (the Mathisens). The Mathisens received no royalty payments when TBCC mined the coal on the Property and brought this action against Consol and its successors, TBCC and Jacobs Ranch, seeking payment of the surface royalty described in the warranty deed between the Shipleys and Consol and other damages.

[¶ 7] The district court granted TBCC's motion to dismiss and a judgment on the pleadings in favor of Consol and Jacobs Ranch. In its decision, the court ruled that, under the plain language of the deed, Consol was not obligated to pay the surface royalty because it never mined any coal from the Property. The court further ruled the absence of language in the warranty deed obligating Consol's successors to pay the surface royalty demonstrated that the surface royalty obligation did not run with the land. The court thus concluded, as a matter of law, that Consol's successors were not obligated to pay the surface royalty to the Mathisens.

### STANDARD OF REVIEW

■ [¶ 8] When a district court considers materials outside the pleadings in entering a judgment on the pleadings or in ordering a W.R.C.P. 12(b)(6) dismissal, we treat the ruling as a summary judgment. *Ballinger v. Thompson*, 2005 WY 101, ¶ 9, 118 P.3d 429, 433 (Wyo.2005); *Vigil v. Ruettgers*, 887 P.2d 521, 523 (Wyo.1994). Because the district court considered materials presented by the parties in addition to the pleadings in this case, the summary judgment standard is appropriate.

■ [¶ 9] Our standard for reviewing summary judgments is *de novo* and was well stated in *Caballo Coal Co. v. Fid. Exploration & Prod. Co.*, 2004 WY 6, ¶ 7, 84 P.3d 311, 313–14 (Wyo.2004) (quoting *McGee v.*

---

1. In 1982, Consol conveyed the Property to Kerr McGee Corporation, which conveyed it to the Kerr-McGee Coal Corporation. Kennecott Energy and Coal Company purchased Kerr McGee Coal Corporation and renamed it Jacobs Ranch Coal Company.

*Caballo Coal Co.*, 2003 WY 68, ¶ 6, 69 P.3d 908, 910–11(Wyo.2003)):

> Summary judgment motions are determined under the following language from W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

> The purpose of summary judgment is to dispose of suits before trial that present no genuine issue of material fact. *Moore v. Kiljander*, 604 P.2d 204, 207 (Wyo. 1979). Summary judgment is a drastic remedy designed to pierce the formal allegations and reach the merits of the controversy, but only where no genuine issue of material fact is present. *Weaver v. Blue Cross Blue Shield of Wyoming*, 609 P.2d 984, 986 (Wyo.1980). A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Schuler v. Community First Nat. Bank*, 999 P.2d 1303, 1304 (Wyo.2000). The summary judgment movant has the initial burden of establishing by admissible evidence a prima facie case; once this is accomplished, the burden shifts and the opposing party must present specific facts showing that there is a genuine issue of material fact. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987); *Gennings v. First Nat. Bank of Thermopolis*, 654 P.2d 154, 156 (Wyo. 1982).

> This Court reviews a summary judgment in the same light as the district court, using the same materials and following the same standards. *Unicorn Drilling, Inc. v. Heart Mountain Irr. Dist.*, 3 P.3d 857, 860 (Wyo.2000) (quoting *Gray v. Norwest Bank Wyoming, N.A.*, 984 P.2d 1088, 1091 (Wyo.1999)). The record is reviewed, however, from the vantage point most favorable to the party who opposed the motion, and this Court will give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Garcia v. Lawson*, 928 P.2d 1164, 1166 (Wyo.1996).

## DISCUSSION

[¶ 10] Although the parties address several corollary issues and arguments in their briefs, the core questions in this case are: whether, under the terms of the deed, Consol was obligated to pay the surface royalty even though it never mined the coal; and whether the surface royalty clause ran with the land so as to obligate Consol's successors, Jacobs Ranch and/or TBCC, to make surface royalty payments to the Mathisens when the coal was mined.

[¶ 11] In determining whether Consol is obligated to pay surface royalties to the Mathisens, we start with the language of the deed in which the Shipleys conveyed the Property to Consol. The majority of the deed referred to the Shipleys as the "parties of the first part" and to Consol as the "party of the second part." The surface royalty clause, however, abandoned the "parties" nomenclature and referred to them as "Owner" and "Consol." The last paragraph before the Shipleys' signatures stated:

> As further consideration for the sale and conveyance of said lands by Owner to Consol, Consol shall pay to Owner a surface royalty for all coal mined, removed and sold by Consol from said lands for two cents (2¢) per ton of 2,000 pounds or one half of one percent (½ of 1%) F.O.B. the mine, whichever is the greater[.]

[¶ 12] In *Hickman v. Groves*, 2003 WY 76, ¶ 6, 71 P.3d 256, 258 (Wyo.2003), we repeated our well known standard for interpreting deeds, as a type of contract.

> "According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties. In the absence of any ambiguity, the contract will be

enforced according to its terms because no construction is appropriate." *Amoco Production Company v. EM Nominee Partnership Company,* 2 P.3d 534, 539–40 (Wyo.2000) (citations omitted).

The determination of the parties' intent is our prime focus in interpreting or construing a contract. If an agreement is in writing and its language is clear and unambiguous, the parties' intention is to be secured from the words of the agreement. When the agreement's language is clear and unambiguous, we consider the writing as a whole, taking into account relationships between various parts. In interpreting unambiguous contracts involving mineral interests, we have consistently looked to surrounding circumstances, facts showing the relations of the parties, the subject matter of the contract, and the apparent purpose of making the contract. *Boley v. Greenough,* 22 P.3d 854, 858 (Wyo.2001).... Differing interpretations of contracts alone do not constitute ambiguity requiring extrinsic evidence. *Moncrief v. Louisiana Land and Exploration Co.,* 861 P.2d 516, 524 (Wyo.1993).

We must first examine the terms of the deed and give them their plain and ordinary meaning. *Wolter v. Equitable Resources Energy Co., Western Region,* 979 P.2d 948, 951 (Wyo.1999); *Pete Lien & Sons, Inc. v. Ellsworth Peck Construction Co.,* 896 P.2d 761, 763 (Wyo.1995). Plain meaning is that "meaning which [the] language would convey to reasonable persons at the time and place of its use." *Moncrief,* 861 P.2d at 524.

*See also, Newman v. RAG Wyoming Land Co.,* 2002 WY 132, ¶ 11, 53 P.3d 540, 544 (Wyo.2002); *WADI Petroleum v. Ultra Resources, Inc.,* 2003 WY 41, ¶ 10, 65 P.3d 703, 707–08 (Wyo.2003).

Whether an ambiguity exists, as a matter of law, is for the court to determine. In making this determination, the court may consider extrinsic evidence bearing upon the meaning of the written terms, such as evidence of local usage and of the circumstances surrounding the making of the contract. However, the court may not consider the parties' own extrinsic expressions of intent. *Hickman,* ¶ 11, 71 P.3d at 259–60 (quoting *KN Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769, 776–77 (Colo.1985)). Even if the words of a deed are plain and unambiguous, when a party establishes the existence of a material issue of fact regarding whether a particular term or phrase used in a deed had a special meaning at the time and place of its use, we will consider extrinsic evidence to resolve that issue. *Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 26, 126 P.3d 909, 921 (Wyo.2006).

[¶ 13] The plain language of the deed in question in this case stated in relevant part: "Consol shall pay to Owner a surface royalty for all coal mined, removed and sold by Consol from said lands:...." The obligation to pay the royalty is limited, by its plain language, to coal mined, removed and sold by Consol. The language is clear that, in order to trigger the obligation to pay the surface royalty, Consol had to mine and sell the coal. The district court succinctly stated: "Since Consolidation Coal mined nothing, they owe nothing." The clear and unequivocal language of the deed supports the district court's ruling that, because Consol did not mine any coal, it was not obligated to pay the Mathisens a surface royalty.

[¶ 14] The next question is whether Consol's successors in interest, Jacobs Ranch and/or TBCC, were obligated to pay the surface royalty to the Mathisens when the coal was actually mined. In support of their position, the Mathisens maintain that the "surface royalty" provision runs with the land. A covenant that runs with the land is considered to be "appurtenant" to the land. *See Seven Lakes Dev. Co., L.L.C. v. Maxson,* 2006 WY 136, ¶ 18, 144 P.3d 1239, 1247 (Wyo. 2006). Many years ago, this Court explained that a covenant that runs with the land "inures to the benefit of, or must be fulfilled by, whatever party holds the land at the time when fulfillment is due." *Lingle Water Users' Ass'n v. Occidental Bldg. & Loan Ass'n,* 43 Wyo. 41, 297 P. 385, 387 (Wyo. 1931). A party seeking to establish that a covenant runs with the land must demonstrate: 1) the original covenant is enforce-

able; 2) the parties to the original covenant intended that the covenant run with the land; 3) the covenant touches and concerns the land; and 4) there is privity of estate between the parties to the dispute. *Jackson Hole Racquet Club Resort v. Teton Pines Ltd. Partnership*, 839 P.2d 951, 956 (Wyo. 1992). *See also*, 21 CJS *Covenants* § 32 (2007).

[¶ 15] Because it is determinative to the outcome of this case, we begin our analysis with the second element necessary for a covenant to run with the land: The original parties intended the covenant to run with the land. The provision creating the surface royalty stated that the obligation belonged to Consol specifically and did not refer to Consol's successors or assigns. Moreover, the benefit was given to the Shipleys as "Owner" and did not indicate that it was to pass to the Shipleys' heirs or successors. Although not dispositive in determining the intent of the parties, the use of words of succession suggests that the provision runs with the land, while omission of such words may suggest the intent that the obligation is personal rather than appurtenant. *See generally*, 21 C.J.S. *Covenants* § 33 (2007); *Seven Lakes*, ¶ 18, 144 P.3d at 1247 (noting the use of words of succession in ruling that hunting and fishing privileges in deeds were profits which ran with the land rather than licenses which were personal and revocable).

[¶ 16] The Mathisens argue, however, that the appearance of the phrase "successors and assigns" in seven other places in the deed indicates the parties also intended the royalty provision to benefit the Shipleys' successors and obligate Consol's successors. While our precedent requires that we construe the deed as a whole and in light of all of its provisions, *see, e.g., Hickman*, ¶ 6, 71 P.3d at 258, the inclusion of "successors and assigns" in many places and its omission in the royalty clause harms the Mathisens' position more than it helps. This selective inclusion of the terms of succession in specific places throughout the deed strongly indicates that the failure to include similar language in the surface royalty provision was deliberate. *See generally, Stutzman v. Office of Wyo.*

*State Eng'r*, 2006 WY 30 ¶ 16, 130 P.3d 470, 475 (Wyo.2006) (stating, in a statutory interpretation case, "omission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them"). Given the fact that the surface royalty provision refers to Consol specifically and the "successors or assigns" terminology exists in other places throughout the deed, the absence of words of succession in the royalty provision indicates that the original parties did not intend the surface royalty to the run with the land.

[¶ 17] In addition to the lack of words of succession, we note that the provision specifically stated that the surface royalty obligation was given "[a]s further consideration for the sale and conveyance of said lands by Owner to Consol." This phrase indicates that the obligation was personal between the Shipleys and Consol and was related only to the original sale. We, therefore, conclude the plain language of the deed provided that the surface royalty was personal to the parties to the transaction and did not run with the land.

[¶ 18] The Mathisens argue, however, that the district court erred by failing to consider the circumstances surrounding the transfer of the Property. On appeal, the Mathisens argue:

> [T]he court should consider the circumstances surrounding the transaction. In 1975, the industry was just beginning to develop the tremendous resources of the Thunder Basin. The value of the Shipley property was dependent upon the value of the underlying coal. As that was an unknown, the parties crafted the method whereby that value could be tied to future production.

In another place in their brief, the Mathisens suggest that the district court erred by failing to consider, in deciding whether the surface royalty provision runs with the land, the facts that Consol had no legal right to mine the coal when it purchased the Property and that Consol contemplated its successors in interest might one day mine the coal.

[¶ 19] Our precedent clearly establishes that, in appropriate cases, we will consider the facts and circumstances surrounding a transaction in order to discern the meaning of the words used in a deed, even when the language of the deed is clear and unambiguous. *See, e.g., Hickman,* ¶ 6, 71 P.3d at 258; *Newman,* ¶ 12, 53 P.3d at 544; *Ecosystem Res., L.C. v. Broadbent Land & Res., L.L.C.,* 2007 WY 87, ¶¶ 35–36, 158 P.3d 685, 694 (Wyo.2007). We agree with the Mathisens that the undisputed fact that Consol did not have the federal lease to mine the coal when it purchased the Property from the Shipleys is a circumstance that should be considered in interpreting the deed because it pertains to the "purposes of the grant in terms of respective manner and enjoyment of surface and mineral estates." *Newman,* ¶ 19, 53 P.3d at 546, quoting Comment, *New Values Under Old Oil and Gas Leases: Helium, Who Owns It?,* 62 Mich. L.Rev. 1158, 1169 (1964). That circumstance does not, however, advance the Mathisens' position that the parties intended the surface royalty to run with the land because it could both support and undermine such an interpretation. On one hand, the fact that Consol did not have a legal right to mine the coal could suggest that the parties intended the provision to run with the land so that the Shipleys and/or their successors would eventually receive further compensation when the coal was mined. On the other hand, a contrary inference could also be made that Consol, uncertain it would ever be able to mine the coal, may not have wanted to encumber the Property with a burden that runs with the land because such a burden would diminish the value of the Property when Consol decided to sell it.[2] Because these contradictory inferences are equally plausible, the fact that Consol did not have the right to mine the coal when it purchased the Property is not helpful in divining the parties' intent. The Mathisens' interpretation requires us to speculate regarding that intent, and we decline to do so.

[¶ 20] With regard to the Mathisens' suggestion that the value of the coal was unknown at the time the deed was executed and the royalty payment would have been necessary for them to have received fair value for their property, they provided no evidence in support of their position. In order to avoid a summary judgment, the party advancing an argument concerning the interpretation of a contract in light of the facts and circumstances of its execution must present evidence to the district court to support its position. We have explained this basic tenet of summary judgment jurisprudence as follows:

> "After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings ..., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden."

> The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact. *Cook,* ¶ 12, 126 P.3d at 890, quoting *Jones v. Schabron,* 2005 WY 65, ¶¶ 9–11, 113 P.3d 34, 37 (Wyo.2005).

*Hatton v. Energy Elec. Co.,* 2006 WY 151, ¶ 9, 148 P.3d 8, 12–13 (Wyo.2006).

[¶ 21] The Mathisens' musings about the state of the industry in the Thunder Basin when the deed was executed and the value of the Shipleys' property being dependent on the underlying coal are pure conjecture and speculation. The lack of evidence to support these aspects of the Mathisens' facts and

2. The undisputed facts are that Consol, having been unsuccessful in obtaining the coal lease, sold the Property to Kerr McGee which also did not mine the coal, and ultimately sold to Kenne- cott which renamed the company Jacobs Ranch Coal Company. Finally, TBCC did obtain the federal coal lease and leased the Property from Jacobs Ranch to facilitate its mining operation.

circumstances argument distinguishes this case from others where we have ruled that consideration of extrinsic evidence is warranted. In *Hickman*, we reversed a summary judgment which held that a reservation of oil rights in a land transfer did not reserve any rights to coal bed methane gas. The record included evidence of circumstances at the time of the transfer indicating that "it was common for rural residents to refer to 'oil rights' when referring to both oil and gas rights, without differentiating between the two substances." *Hickman*, ¶ 14, 71 P.3d at 261. This evidence raised a material question of fact concerning the meaning of "oil rights" within the context of the deed that required reversal of the summary judgment. *Id.*

[¶ 22] In *Ecosystem*, we considered whether timber interests reserved by the railroad in deeds conveying the surface rights were limited to a "reasonable time" even though the deeds did not contain a statement about the duration of the interests. We held that evidence presented by the appellant about the nature of the railroad's use of timber in its business activities and the consideration paid by the surface owners for the conveyances was sufficient to create a genuine issue of material fact about the surrounding circumstances. *Ecosystem*, ¶¶ 35–36, 158 P.3d at 689. Here, the Mathisens presented no evidence to support their claim that the facts and circumstances surrounding the Consol transaction should be evaluated by the court. They failed to bring forth specific evidence to support their position regarding these alleged facts and circumstances and, therefore, create a material issue of fact to avoid summary judgment.

[¶ 23] Because neither the plain language of the deed nor evidence of the circumstances surrounding the transfer raise a question of material fact, we find no basis for overturning the trial court's conclusion that the parties to the deed did not intend for Consol's successors to be bound by the surface royalty obligation. Our finding that the parties did not intend that the surface royalty provision run with the land is dispositive; consequently, it is unnecessary for us to consider the other requirements for a covenant to run with the land or the other arguments presented by the parties in this case.

## CONCLUSION

[¶ 24] We hold the district court properly granted judgment as a matter of law to the appellees. The plain language of the deed establishes that Consol was not obligated to pay a surface royalty to the Mathisens because it never mined the coal on the Property. Moreover, the Mathisens failed to establish an essential element required for the surface royalty provision to run with the land, i.e., the original parties intended it to run with land. Thus, Consol's successors in interest were not obligated to make surface royalty payments to the Mathisens when the coal was mined.

[¶ 25] Affirmed.