# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 15

OCTOBER TERM, A.D. 2020

January 28, 2021

SCOTT B. SMITHSON and ELENA A.
MOROZOVA,

Appellants
(Plaintiffs),

v.                                                            S-20-0117

FREDERICK G. LINDZEY and
STEPHANIE D. LINDZEY,

Appellees
(Defendants).

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellants:*
> *Mitchell Edwards, Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Edwards.*

*Representing Appellees:*
> *David McCarthy, David McCarthy, P.C., Rawlins, Wyoming. Argument by Mr. McCarthy.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Frederick and Stephanie Lindzey's predecessors conveyed the right to fish in the Little Laramie River to the predecessors of Scott Smithson and Elena Morozova (the Smithsons), who contend they continue to hold that right because it is a servitude appurtenant to the land.  The Lindzeys, owners of the servient estate, disagree, and have placed fences and "No Trespassing" and "No Fishing" signs on the property line.  The Smithsons filed suit for declaratory judgment affirming the right and for an injunction preventing the Lindzeys from interfering with it.  On cross-motions for summary judgment, the district court found in favor of the Lindzeys, declared any right to fish was a license that ended when the original grantees sold their interest in the land, and denied injunctive relief.  We reverse and remand.

### *ISSUE*

[¶2]    Did the 1965 Warranty Deed grant fishing rights to the original grantees only, or did it grant a servitude appurtenant to the Smithson's land?

### *FACTS*

[¶3]    The Smithsons own land in Albany County, between Millbrook Road and the Little Laramie River.  The northwest property line meanders ten feet from the river (see Fig. 1).  The Lindzeys own the adjacent tract which includes the river and ten feet of bank on the Smithson side.

**Fig. 1**: The Smithson property



[¶4]    Margaret May and Peggy Jo Foreman conveyed a portion of their land to Charles and Hanna Groathouse in 1965.  The warranty deed included this language:

> The intention of this deed is that the westerly boundary line of the tract hereby conveyed shall be 10 feet from the right bank of the Little Laramie River and none of the rights grantors have in said River, except as hereinafter mentioned, are being conveyed.
>
> * * *
>
> Grantors specifically grant to grantees fishing rights along the right bank of the Little Laramie River adjacent to the tract hereby conveyed but such rights shall not be exclusive.

After several interim conveyances, Scott Smithson purchased the property in 1996 and conveyed it to himself and Elena Morozova in 2016.  Each of the warranty deeds in the Smithsons' chain of title state the conveyances include appurtenances thereto.  In 1989, Peggy Jo Foreman granted the Lindzeys their property.  That warranty deed provides the conveyance is "SUBJECT TO: reservations, restrictions, easements, agreements, covenants and rights of way of record and taxes for 1989 and subsequent years."

[¶5]    The Lindzeys informed the Smithsons that they would like to purchase the Smithson property if they offered it for sale.  When the Smithsons decided to sell, they offered it to the Lindzeys, but the parties could not agree on a price.  Soon after, the Lindzeys installed a fence along the property line with a "No Trespass" sign facing the Smithsons' bay window.  The Lindzeys then installed additional posts along the property line with "No Fishing" and "No Trespassing" signs.

[¶6]    In April 2019, the Smithsons filed suit against the Lindzeys.  The Smithsons asked the district court to declare the fishing rights along the bank of the Little Laramie River adjacent to their property were appurtenant rights that benefit and run with their land, and encumber and burden the Lindzey property.  They also asked the court to enjoin the Lindzeys from interfering with their ability to exercise and enjoy the fishing rights conferred by the 1965 deed, and to order the Lindzeys to remove barricade fences and posts with "No Fishing" and "No Trespassing" signs.

[¶7]    The parties filed cross-motions for summary judgment, and the district court granted summary judgment to the Lindzeys, declaring the deed "created only a revocable license or personal servitude in the 1965 grantees to fish alongside the Little Laramie River, and that said fishing rights were not intended to be transferable.  Therefore, such

fishing rights ceased to exist when the Groathouses divested themselves of their interest in the Smithson Property." The district court denied the Smithsons' claims for declaratory judgment and for injunctive relief. The Smithsons appealed. We reverse and remand for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

[¶8]    Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Seven Lakes Dev. Co., L.L.C. v. Maxson*, 2006 WY 136, ¶ 7, 144 P.3d 1239, 1244 (Wyo. 2006); W.R.C.P. 56(a). We review summary judgment de novo, affording no deference to the district court's ruling, using the same materials and following the same standards as the district court. We examine the record from the vantage point most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which may fairly be drawn from the record. *Gayhart Tr. of Tiphany L. Gayhart Living Tr. dated Oct. 1, 2008 v. Corsi*, 2020 WY 58, ¶ 11, 462 P.3d 904, 908 (Wyo. 2020); *Pennaco Energy, Inc. v. KD Co. LLC*, 2015 WY 152, ¶ 14, 363 P.3d 18, 22 (Wyo. 2015).

## DISCUSSION

[¶9]    The district court determined the 1965 warranty deed created a revocable license or personal servitude in the Groathouses, which the grantors did not intend to be transferrable, and therefore ended when the Groathouses sold the land. The Smithsons claim the warranty deed created a profit, appurtenant to the land, which transferred to them automatically when they purchased their land. Before we construe the deed to determine what type of interest it created, we summarize the relevant privileges and interests in land.

[¶10]  "A license is a privilege to do certain acts of a temporary character on the land of another which is revocable at the will of a licensor unless a definite time has been specified, or unless it is coupled with an interest." *Seven Lakes*, 2006 WY 136, ¶ 11, 144 P.3d at 1245 (quoting *Sammons v. Am. Auto. Ass'n*, 912 P.2d 1103, 1105 (Wyo. 1996) (citation omitted)). A license is not an interest in the land, but means the possessor is not a trespasser when he enters the grantor's land. *Seven Lakes*, 2006 WY 136, ¶ 11, 144 P.3d at 1245 (citing *Sammons*, 912 P.2d at 1105). A license may be created orally, in writing, or by implication "from the acts of the parties, from their relations, and from usage and custom." *Seven Lakes*, 2006 WY 136, ¶ 11, 144 P.3d at 1245 (quoting *Sammons*, 912 P.2d at 1105 (citation omitted)). "[A] license is revocable at will." *Seven Lakes*, 2006 WY 136, ¶ 14, 144 P.3d at 1246 (quoting Restatement (Third) of Prop.: Servitudes § 2.2 cmt. h (2000)).

[¶11]  A servitude is distinct from a license because it is an interest in land. *Seven Lakes*, 2006 WY 136, ¶¶ 11-12, 144 P.3d at 1245-46. A servitude is normally irrevocable unless

3

"the right to revoke is expressly reserved and properly exercised." *Id.* at ¶ 14, 144 P.3d at 1246 (quoting Restatement (Third) of Prop.: Servitudes § 2.2 cmt. h). Easements and profits a prendre (profits) are servitudes. *Id.* at ¶ 12, 144 P.3d at 1245; Restatement (Third) of Prop.: Servitudes § 1.1(2). An easement entitles the holder to the use or enjoyment of another's property. *Seven Lakes*, 2006 WY 136, ¶ 12, 144 P.3d at 1245 (citing *Hasvold v. Park Cnty. Sch. Dist. No. 6*, 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo. 2002)). A profit is an "easement plus": it allows the holder to enter another's land and remove from it "the fruits not yet carried away." *Seven Lakes*, 2006 WY 136, ¶ 12, 144 P.3d at 1245 (citing Restatement (Third) of Prop.: Servitudes § 1.2 cmt. e; 25 Am. Jur. 2d *Easements and Licenses* § 3 (2004)). We have held that hunting and fishing rights in the land of another are profits. *Seven Lakes*, 2006 WY 136, ¶ 20, 144 P.3d at 1248 (citing 25 Am. Jur. 2d *Easements and Licenses* § 3; 28A C.J.S. *Easements* § 9; L.S. Tellier, Annotation, *Right Created by Private Grant or Reservation to Hunt or Fish on Another's Land*, 49 A.L.R.2d 1395 (1956) and citations therein); *see also* Restatement (Third) of Prop.: Servitudes § 1.2 Reporter's Note: *Hunting and Fishing Rights Are Profits*.

[¶12] "We interpret a warranty deed like a contract from specific language of the deed, and begin by looking at the instrument itself." *Seven Lakes*, 2006 WY 136, ¶ 10, 144 P.3d at 1245 (quoting *Gilstrap v. June Eisele Warren Tr.*, 2005 WY 21, ¶ 12, 106 P.3d 858, 862 (Wyo. 2005) (quotation marks and citation omitted)). We look first at the terms of the deed, giving them their plain and ordinary meaning: "that meaning which the language would convey to reasonable persons at the time and place of its use." *Seven Lakes*, 2006 WY 136, ¶ 10, 144 P.3d at 1245 (quoting *Gilstrap*, 2005 WY 21, ¶ 12, 106 P.3d at 862 (alteration and quotation marks omitted)). When the terms are clear and unambiguous, this Court looks within the "four corners" of the document to arrive at the intent of the parties. *Seven Lakes*, 2006 WY 136, ¶ 10, 144 P.3d at 1245 (citing *Gilstrap*, 2005 WY 21, ¶ 12, 106 P.3d at 862). However, "even if a contract is unambiguous, we can examine evidence of the circumstances surrounding the execution of the deed to arrive at the parties' intent." *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 14, 327 P.3d 732, 738 (Wyo. 2014) (quoting *Ecosystem Res., L.C. v. Broadbent Land & Res., L.L.C.*, 2007 WY 87, ¶ 10, 158 P.3d 685, 688 (Wyo. 2007)). The parties agree the language in the 1965 Warranty Deed is unambiguous, but they disagree on its meaning. Mere disagreement about the meaning of language in a deed does not necessarily mean that the deed is ambiguous. *Seven Lakes*, 2006 WY 136, ¶ 16, 144 P.3d at 1246-47 (citing *Newman v. RAG Wyo. Land Co.*, 2002 WY 132, ¶ 11, 53 P.3d 540, 544 (Wyo. 2002)).

[¶13] To determine what interest, if any, the Smithsons hold in the Lindzey tract, we must first determine whether the 1965 Warranty Deed created a license or a servitude. Then, if we determine the deed created a servitude, we must determine whether it is appurtenant to the land or was held in gross by the Groathouses. If it is appurtenant, it was conveyed to the Groathouses' successors automatically.

4

## I.	The 1965 Warranty Deed Granted a Profit, Not a License

[¶14] The parties' intent is the critical factor in determining whether a license or servitude arises from a conveyance. *Seven Lakes*, 2006 WY 136, ¶ 17, 144 P.3d at 1247 (citing *Baker v. Pike*, 2002 WY 34, ¶ 20, 41 P.3d 537, 543 (Wyo. 2002)). Intent can be identified by "the manner in which the right was created, the nature of the right created, the duration of the right, the amount of consideration given for the right, and whether there is a reservation of power to revoke the right." *Seven Lakes*, 2006 WY 136, ¶ 17, 144 P.3d at 1247 (quoting *Baker*, 2002 WY 34, ¶ 20, 41 P.3d at 543). In *Seven Lakes*, we concluded the hunting and fishing rights were profits appurtenant to the land, because:

> (1) the hunting and fishing "privileges" were created in a warranty deed for property in the Woodedge area; (2) the grant created a legally enforceable right to enter and take wildlife and fish from the land of the grantor; (3) no time was specified for the "privileges" to continue or at which they would automatically cease; (4) consideration was paid for the warranty deed, including all items listed as "Restrictive and Protective Covenants"; and (5) the only implied basis for revoking the "privileges" was if they were "commercialized."

2006 WY 136, ¶ 18, 144 P.3d at 1247.

[¶15] Similarly, the fishing right in this case was created in a warranty deed conveying a tract of land. The grant created a legally enforceable right to fish on the grantors' land. The right has no duration or expiration. The grantees paid consideration for the right as part of the purchase of their land. And the grantors reserved no power to revoke the right. We conclude the 1965 Warranty Deed granted an irrevocable servitude, not a revocable license. The servitude is a profit because it is more than an easement, it is a right to enter the Lindzey property and take fish from the Little Laramie River.

[¶16] The Lindzeys claim "[t]he plain language of the 1965 deed clearly and unambiguously stated the privilege to fish was personal to and would end on the lives of the [Groathouses]." To support this interpretation, the Lindzeys contend the word "specifically" in the phrase "Grantors specifically grant to grantees fishing rights," modifies the verb "grant" and not "fishing rights," and therefore the right must be specific to the grantees alone. They contend that if the grantors had intended otherwise, the deed would say "Grantors grant to Grantees specifically fishing rights." But "specifically" denotes the right granted, particularly when we consider the rest of the document, which contains a general denial in that "none of the rights grantors have in said River, except as hereinafter mentioned, are being conveyed." The specific grant of fishing rights is the exception to that restriction.

5

[¶17] The Lindzeys point to the fact that the deed states the fishing rights are not exclusive to the grantees, suggesting that grantors' retention of the right to fish indicated an intent to grant only a license. We conclude that grantors' retention of the right to fish indicates only that they intended to exercise their right to fish in the Little Laramie River along with grantees. *See* The Law of Easements & Licenses in Land § 1:16, Westlaw (database updated November 2020) ("[P]rofits may be created to be exclusive. This means that the holder is the only one, including the owner of the servient tenement, who may remove the subject of the profit. If the profit is nonexclusive, the servient owner may also remove the item that is the subject of the profit.").

## II.     The 1965 Warranty Deed Granted a Profit That Is Appurtenant to the Land

[¶18] Servitudes are either appurtenant to the land or held in gross. *Seven Lakes*, 2006 WY 136, ¶ 13, 144 P.3d at 1246 (citing 25 Am. Jur. 2d *Easements and Licenses* §§ 3, 8, 9; 28A C.J.S. *Easements* §§ 9-11); Restatement (Third) of Prop.: Servitudes § 4.5. "Appurtenant" means the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land: the benefit may only be held by the owner or occupier of a particular unit or parcel, and the burden obligates the owner or occupier of a particular unit or parcel. Restatement (Third) of Prop.: Servitudes § 1.5(1). "In gross" means the benefit or burden of a servitude is not tied to ownership or occupancy of land. *Id.* at § 1.5(2); *see also Seven Lakes*, 2006 WY 136, ¶ 13, 144 P.3d at 1246; *Pokorny v. Salas*, 2003 WY 159, ¶ 22, 81 P.3d 171, 177 (Wyo. 2003) (citing *Hasvold*, 2002 WY 65, ¶¶ 13-14, 45 P.3d at 638). A servitude "will not be presumed to be in gross when it can fairly be construed to be appurtenant." *Gayhart*, 2020 WY 58, ¶ 20, 462 P.3d at 910 (quoting *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 586 (Wyo. 1999)); *Leeks Canyon*, 2014 WY 62, ¶ 34, 327 P.3d at 742 (quoting *Hasvold*, 2002 WY 65, ¶ 14, 45 P.3d at 638).

[¶19] We begin our analysis for whether a servitude is appurtenant or in gross by asking who it benefits. A servitude is:

> (a) appurtenant to an interest in property if it serves a purpose that would be more useful to a successor to a property interest held by the original beneficiary of the servitude at the time the servitude was created than it would be to the original beneficiary after transfer of that interest to a successor;

> (b) in gross if created in a person who held no property that benefited from the servitude, or if it serves a purpose that would be more useful to the original beneficiary than it would be to a successor to an interest in property held by the original beneficiary at the time the servitude was created[.]

6

*Hasvold*, 2002 WY 65, ¶ 14, 45 P.3d at 638-39 (quoting Restatement (Third) of Prop.: Servitudes § 4.5(1)); *see also Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 975 (Wyo. 1974) (citing 5 A.L.I. Restatement of the Law, Property Servitudes §§ 453 and 454 (an easement is appurtenant when it is created to benefit and does benefit the possessor of the land; an easement is in gross when it is not created to benefit or does not benefit the possessor of any tract)); *Leeks Canyon*, 2014 WY 62, ¶ 13, 327 P.3d at 737-38 ("If the easement benefits a particular parcel of land, . . . the easement is said to be appurtenant to it. If the easement only benefits an individual personally, not as owner of a particular parcel of land, the easement is termed in gross.") (quoting Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 1:1, at 1-6 (2014)).

[¶20] The profit was created to benefit and does benefit the possessor of the Smithson tract because the deed grants the right to fish the bank of the Little Laramie River "adjacent to the tract hereby conveyed." The owners of the tract are benefitted by the use and enjoyment of the Lindzeys' property for fishing, and by the value the profit adds to their own property. *Markstein v. Countryside I, L.L.C.*, 2003 WY 122, ¶ 39, 77 P.3d 389, 401 (Wyo. 2003). Once they no longer possessed the tract, the Groathouses could derive no benefit from the fishing rights, because they had no way to exercise it.

[¶21] We have also identified several "badges" or "earmarks" of an appurtenant easement:

> (1) that the easement was created to benefit a specific tract of land; (2) that the grant was for a perpetual right-of-way for ingress and egress; (3) that the grantee has the right to inspect and maintain the easement; (4) that the right is not limited to the possessor personally; (5) that the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) that the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates.

*Gayhart*, 2020 WY 58, ¶ 21, 462 P.3d at 910 (quoting *Hasvold*, 2002 WY 65, ¶ 21, 45 P.3d at 640); *Weber*, 519 P.2d at 975.

[¶22] First, the profit was created to benefit the Smithson tract, as discussed above. Second, while the language does not state the profit is perpetual, it does not have words limiting its duration. The third badge, the right to inspect and maintain, is not applicable to this grant. Fourth, the right is not limited to the Groathouses personally. The sixth badge is present – the deed contains no limitations on the transferability of the easement to future transfers of both the dominant and servient estate. Only the fifth badge is

missing because the 1965 Warranty Deed contains no words of succession such as "heirs, executors, administrators, successors, assigns and legal representatives."

[¶23] The Lindzeys place great emphasis on the absence of words of inheritance such as "heirs and assigns," arguing that without them, the warranty deed created only a life estate in the profit, which ended on the lives of the Groathouses and does not run with the land. They attempt to distinguish *Seven Lakes*, where we found that a profit to hunt and fish appurtenant to the land existed, in part, because the deed in that case used the phrases "heirs and assigns" and "run[s] with the land." We have considered words of succession to find servitudes are appurtenant to the land in cases in addition to *Seven Lakes. See, e.g.*, *Pokorny*, 2003 WY 159, ¶¶ 24-26, 81 P.3d at 178; *R.C.R.*, 978 P.2d at 586. And, as the Lindzeys point out, we have weighed the absence of such words to find that a covenant does not run with the land. In *Mathisen v. Thunder Basin Coal Co., LLC*, we said, "Although not dispositive in determining the intent of the parties, the use of words of succession suggests that the provision runs with the land, while omission of such words may suggest the intent that the obligation is personal rather than appurtenant." 2007 WY 161, ¶ 15, 169 P.3d 61, 66 (Wyo. 2007) (addressing covenants, not easements or profits). The presence or absence of words of succession is a non-dispositive factor we weigh in conjunction with the other relevant factors. *See* Restatement (Third) of Prop.: Servitudes § 2.2 cmt. d. (insistence on particular verbal formulas has disappeared from the modern law of servitudes, courts give effect to the intent of the parties by reading instrument as whole). Considering our "strong preference to construe an easement as appurtenant rather than in gross," *Pokorny*, 2003 WY 159, ¶ 23, 81 P.3d at 177 (quoting *Baker*, 2002 WY 34, ¶ 12, 41 P.3d at 541), and weighing the presence of almost all the "badges" of appurtenance, we conclude the parties intended that the right to access the river and take fish from it is a profit appurtenant to the land.

[¶24] The Lindzeys argue that Wyoming law imposes an additional requirement, "[e]xplicit language stating an intention that the interest is irrevocable or 'runs with the land' is necessary to create an irrevocable and transferable property right." They rely on *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶¶ 9-21, 191 P.3d 125, 129-33 (Wyo. 2008), for this proposition. The issue in *Jacobs Ranch Coal Co.* was whether the obligation to pay a surface royalty was a covenant running with the land. *Id.* at ¶ 2, 191 P.3d at 127. Covenants can be a form of servitude if they "run with the land," but they are distinguished from easements and profits. Restatement (Third) of Prop.: Servitudes §§ 1.2, 1.3. We have adopted a different test for establishing that a covenant runs with the land:

> the "party seeking to establish that a covenant runs with the land must demonstrate: 1) the original covenant is enforceable; 2) the parties to the original covenant intended that the covenant run with the land; 3) the covenant touches

and concerns the land; and 4) there is privity of estate between the parties to the dispute."

*Jacobs Ranch Coal Co.*, 2008 WY 101, ¶ 9, 191 P.3d at 129 (quoting *Mathisen*, 2007 WY 161, ¶ 14, 169 P.3d at 65-66).  In *Jacobs Ranch Coal Co.*, we noted the absence of "language expressing the parties' intent that the obligation was a covenant running with the land," and held that the obligation at issue did not run with the land.  2008 WY 101, ¶ 13, 191 P.3d at 130.  But, because we applied a different test than we do to easements or profits, we find no reason to apply this holding to our analysis of whether the profit in this case is appurtenant to the land.

[¶25]  Finally, the Lindzeys argue that if the 1965 Warranty Deed did grant a servitude, it was personal to the Groathouses, and could not have transferred automatically to their successors.  Wyoming has not adopted § 1.5(3) of the Restatement which recognizes a further distinction between servitudes (either appurtenant or in gross) that are personal to their holder and those that are automatically transferrable or "running with the land."  Restatement (Third) of Prop.: Servitudes § 1.5(3).  In Wyoming, if a servitude is appurtenant, it is not transferable independently of the land, but is conveyed automatically when possession of the dominant property is conveyed, even if not mentioned in the document of transfer.  *Gayhart*, 2020 WY 58, ¶ 27, 462 P.3d at 911 (citing *Box L Corp. v. Teton Cnty. ex rel. Bd. of Cnty. Comm'rs of Teton Cnty.*, 2004 WY 75, ¶ 12, 92 P.3d 811, 815 (Wyo. 2004)).  Because we have determined the 1965 Warranty Deed granted a profit, appurtenant to the Smithson tract, the right to access to fish in the Little Laramie River runs with the land and transferred automatically to the Smithsons as successors of the Groathouses.

### CONCLUSION

[¶26]  The court erred when it granted summary judgment to the Lindzeys because the plain language of the deed created a profit, and nothing in the deed or context of the transfer overcomes the presumption it is appurtenant to the Smithson tract.  The Smithsons are entitled to judgment on their claim for declaratory judgment and to consideration of their claim for injunctive relief.  We reverse and remand for further proceedings consistent with this opinion.